The Chief Justice, and may it please the Court, Sections 11 and 12 of the 33 Act expressly reference and enforce the registration, statement, and prospectus requirements imposed by Section 5 of the Act, 15 U.S.C. 77e. In construing the term such security, therefore, it is appropriate to look to the meaning of that same term as used in Section 5, the source of the prohibitions enforced by Sections 11 and 12. And it's undisputed that such security in Section 5 consistently refers only to shares that are subject to registration, never to exempt shares. Such security in Sections 11 and 12 should be given the same meaning. That reading is confirmed by this Court's decision in Gustafson, which held that it's more reasonable to interpret the liability provisions of the 33 Act as providing remedies for violations of the obligations it had created, not as imposing liabilities independent of the substantive obligations of the Act. Respondents' contrary interpretation would run roughshod over the core statutory distinction between registered and exempt shares, which is fundamental to the structure and operation of the 33 Act. And it would dramatically expand the scope of liability, disrupt the capital formation process, and upset settled expectations by overturning decades of case law and SEC interpretation, consistently holding that plaintiffs must prove they purchased registered shares. Respondents can't identify a single case in the 90-year history of the Securities Act imposing Section 11 liability on exempt shares. Congress, despite revisiting the Act numerous times over the years, has been content to leave the law that way. This Court should reject Respondents' attempt to overturn that long-settled understanding. I welcome the Court's questions. You mentioned 90-year history, but have we had direct listing before? I mean, that seems to be what's causing the problem. We haven't had direct listing before, Your Honor, but certainly there are other circumstances, and it's undisputed that there are many other circumstances in which the tracing requirement, given the modern operation of the securities markets, is difficult or sometimes impossible for plaintiffs to satisfy. But that has not led Congress to change the law and has not led the SEC to adopt any of the possible mechanisms it could adopt to address that concern if it felt it should do so. You mentioned the tracing requirement. Could you speak a little bit about where that comes from and why there's a tracing requirement? Well, so fundamentally, there's no doubt that Congress intended and required there to be tracing and expected tracing would be required. For each share, as opposed to simply saying there's registration, and as a result of that, the stocks are being sold. Because, again, the core distinction in the Act is between shares that are registered and shares that aren't. So, for instance, putting aside the issues in this case, Section 12A.1, which creates a cause of action for unregistered shares. In order to prevail on that cause of action, a plaintiff obviously has to prove that they purchased unregistered shares, not registered shares. That's been in the Act from the beginning. So there's no doubt that Congress knew that plaintiffs would be required to trace. The same is true under Sections 11 and 12A.2 for all the reasons that we've articulated. Finally, do you think that 11 and 12 rise and fall together? We do. And this Court's decision in Gustafson, I think, makes that same point. A core rationale of the Court's decision in Gustafson, as I said, is that the liability provisions imposed by Sections 11 and 12 should be construed extensively with the obligations they enforce. The obligations they enforce arise under Section 5, which imposes an obligation to register particular securities, the shares that have to be registered, and requires a prospectus to be delivered only in connection with particular securities, namely registered securities. But isn't 12A.2 broader? I understood 12A.2 to also include at least some exempt shares. So I go back to what Justice Thomas was just saying about them rising and falling together. It seems as though 12A.2, at least, that liability provision is broader. You're correct, Your Honor, in that Section 12A.2 expressly brings back into the scope of liability certain categories of exempt shares, namely those exempted by Section 3, which exempts particular classes of securities from other obligations of the Act. So under Section 12A.2, Congress specifically spoke to the question of which exempt shares should be subjected to liability. Right, but doesn't that undermine your sort of broader point that all of the liability that Congress was thinking about with respect to Sections 11 and 12 run to registered shares? I mean, we have a discussion in 12 that, as you say, points to certain exempt shares and, I think, preserves liability with respect to those. Well, it does, again, because Congress explicitly said so. But importantly, the parenthetical that brings Section 3 exempt shares back into the scope of liability under Section 12A.2 refers only to Section 3, not to Section 4. And this Court in Gustafson relied on that distinction. It said that silence, that congressional silence with respect to Section 4, as opposed to the congressional reference to Section 3, must be given effect. But why would it need it to have mentioned Section 4? On Section 3, it needed to do that because Section 12 itself states that it applies to most securities exempt under Section 3. But Section 4 really exempts only certain transactions. Correct. Not all unregistered, only certain transactions that are unregistered. Correct. So it seems to me that the negative of Section 4 is, if it's not mentioned, it's covered by 12. Well, this Court in Gustafson expressly addressed that question and said exactly the opposite. The important distinction is that what the Court was saying in Gustafson — No, no. But Gustafson was dealing with what the perspective had to contain. It wasn't dealing with this question of what the meaning of by means of a perspective has to say. Well, with respect, Your Honor, it was. The Court in Gustafson said that by means of a prospectus limits Section 12.2 to public offerings. That's at page 577. And it said that page 571, liability under Section 12.2 cannot attach unless there is an obligation to distribute the prospectus. The obligation to distribute the prospectus is limited to registered share. Mr. Hunger, I thought, though, that direct share sales required could only happen under at least the SEC rules with the registration statement. No, Your Honor. There are no registration statements required to do direct sales at all? Well, I guess I'm not sure what you mean by direct sales. So a public offering, which by definition is an offering that's not exempt under Section 4 — I'm sorry. I'm talking about direct listings, okay, rather than — I'm sorry. But I thought the SEC required before you had a direct listing, you had to file a registration statement. Well, the NIC rule requires a registration statement for a direct listing, but only with respect to registered shares. It doesn't apply by definition. But there is still a requirement that you have a registration statement before you do a direct listing. Sure, just like there's a requirement — So there is an internal referent in Section 12 the way there isn't in Section 11. Judge Friendly and Barnes thought that was significant. And, you know, you rely heavily on Judge Friendly, and it's a good source to rely on in Section 11. But, you know, what helps you with 11 hurts you in 12, at least in Judge Friendly's mind. And why was the great old man wrong? Well, he was wrong because he didn't anticipate the decision in Gustafson, which clarified the scope of Section 1282 liability. And Gustafson holds that, as I said, that the scope of liability under Section 12.2 is limited to the obligation to distribute a prospectus. There is no obligation to distribute a prospectus with respect to Section 4 exempt transactions, which is what we're talking about here. Were you required to issue a prospectus in order to do the direct listing? Yes, because the prospectus and registration requirement are coextensive. The questions that Justice Gorsuch is asking and Justice Sotomayor about 12.2 raised for me a question, which is there's a lot of law out there about Section 11, starting with Judge Friendly's opinion and going all the way down. There's not a lot of law out there on the Section 12 issue. And I'm a bit concerned about deciding that issue without the SEC here, without more law out there, without knowing more about the Section 12 issue. So that's what I'm thinking. Your Honor, the Section 12 issue has not come up very much because of the limitations on Section 12 in other respects, I think. But this Court's decision in Gustafson— Why hasn't the Section 12 issue come up? Okay. So take it now. Okay. I think so. There have been some cases, and the cases— Don't forget mine. There have been some cases in the cases since Gustafson have agreed with our position, as I understand it, but it's not a lot of cases. And previous to Gustafson, Section 12 has the privity requirement, which in many jurisdictions imposes a substantial limitation. The district court in this case took a different approach. So that constrains the number of cases that can be brought. In the old days, before this Court made clear that Section 10b has a scienter requirement and made clear that there's a comparable statute of limitations, 10b was a much more popular route than Sections 11 and 12. They just don't come up nearly as much as Section 10b. 10b is the primary securities law civil cause of action, and the vast majority of the cases arise under that, which is another reason why the sky is not going to fall if this Court adheres to the course of the last 90 years in this case. Can you go back to mine then? I'm sorry, Your Honor. Could you remind me of the question? I figured that was going to happen. Sorry. That's what happens. Why not allow the lower courts to sort out the Section 12 issue before we give a definitive ruling on that? Because I feel in looking at this, in Section 11 there's a lot of law. The SEC's position has been out there for a long time. A lot of cases we don't really have that on Section 12, and I guess I'm just worried about making a mistake on Section 12 one way or another because we don't have the kind of thorough consideration we usually have before we give a definitive opinion on something. Well, the one thing that the District Court and the Court of Appeals got right, in our view, is the fact that such security should be construed the same in both provisions. So that's a great point for you, but as Justice Gorsuch points out, I think the reference is not – there are differences between 11 and 12. We're the exact same language, and maybe you ultimately win on that or maybe you don't, but that strikes me as a big issue for these direct listings and something that I'm not sure we're fully equipped at this moment to chime in on. I think the Court's decision in Gustafson answers these questions. The fundamental logic – I read it a lot, and I didn't come away with, like, this is the clear answer to the Section 12 issue. Maybe I should have. The fundamental logic of the Gustafson decision is that Section 12-2, is limited to public offerings, that is, public sales by the issuer, the controlling shareholders, underwriters, that category. It doesn't extend to the other kinds of sales of securities, which the Act describes. It's our exempt transaction. If we put Gustafson aside for just a second, I mean, everything about Section 12 reads differently from Section 1. There's absolutely no reference to registration. The such security language does not refer back to registration in any way. It talks about prospectuses, but it also talks about or oral communications, which suggests that it's broader than the registration context. And, you know, it has the specific exemption. So there's really nothing in Section 12 that makes it like Section 11. Well, I mean, putting aside, Gustafson kind of ties one arm behind my back. No, I mean, you know, because there's different views of exactly how far Gustafson went and what it says, and one view is Gustafson is just talking about what a prospective means, and it's not talking about this question of what it means to, you know, by means of a prospectus. So anyway, you know, in their contested views of what Gustafson means, we always look at the language of a statute. You know, it's just one of the things that we do. And the language of Section 12 is not the same in every relevant way. Well, that's certainly true, but there are multiple clues as to why Section 12 should be interpreted the way we suggest. Number one, Congress said such security, not any security, which is obviously broader language, and it used that same language in Section 17, which everyone acknowledges does apply to exempt transactions as well as registered shares. The logic of Gustafson can't be reconciled with the position you're suggesting because Gustafson says that the liability imposed by Section 12 is coextensive with the obligation to distribute a prospectus, which by virtue of Section 5B2 is coextensive with registered shares. Section 5B2 says that it's unlawful to disseminate shares in interstate commerce unless such security is accompanied by a prospectus. And such security there necessarily refers only to registered shares. My friends on the other side agree with that. Such security in Section 12 should be given the same meaning as a matter of normal statutory construction as the same term used in the provision that it's enforcing. Do we know what the FCC thinks about your Section 12 argument? Not that we would necessarily defer to it, but it's usually informative. I don't know that they have specifically taken a position on that question. Obviously they have taken quite affirmatively and repeatedly a position on the Section 11 question, including in this court, in the Herman and McClain case, where they told this court explicitly that Section 11 provides a cause of action only for purchasers of registered shares. We've cited that brief in our opening brief. And they chose not to participate in this case, obviously concluding that the prior position they'd taken before this court was sufficient. Mr. Hugger, I guess another way of asking the question my colleagues are getting at is, would the sky fall should we answer the Section 11 question in your client's favor, vacate and remand without addressing the Section 12 question? Well, certainly it would fall in this case because the Court of Appeals answered that question, and it answered it wrongly. And we're going to vacate its judgment in light of your arguments, supposing we were, in light of your arguments on Section 11, and maybe it should reconsider its Section 12 ruling in light of that. Just to add to that, the reason they did reach the conclusion on 12, I believe, is because they thought 11 and 12 should be read together, which all three judges did, two against you and one in your favor. But if they know, the Ninth Circuit knows that you're actually prevailing on Section 11, who knows what they'd do on Section 12? Yes, certainly that would be better than where we stand right now. I would have thought. We obviously think that in light of the Court's decision in Gustafson, it necessarily follows. No, we've got the Gustafson. I've got Gustafson, even if I can't pronounce it correctly. But that would be an available course to the Court in your mind. Yes. I mean, there are further textual reasons, even putting Gustafson aside, why our interpretation of Section 12 is correct. I mentioned the any versus such, which, you know, a textual distinction, this Court not only gives meaning to those distinctions, it's also true in Section 3 of the Act, Congress referred to classes of securities. Respondents' interpretation of such security would essentially rewrite it to mean the whole class, and yet Section 3 of the Act makes clear that when Congress intended to refer to classes of securities, it said so, and it didn't say so in Section 12. It said such security, which, again, should be given a parallel construction to Section 5. Can you help me to understand, though, going back to Justice Kagan's point, all of the differences that we see between 12 and 11? I mean, you're pointing to two areas that you think are similar, but it seems as though liability arises from the offering or selling of a security by means of oral communication, which doesn't have anything to do, I guess, at least on its face, with a prospectus. And so why would you have to have a registered share in order to give rise to that kind of liability? Well, this Court said in Gustafson that oral communication has been construed to be, given that it appears together with prospectus and in a statute where the structure makes clear what a prospectus is and when it's obligated to be distributed, that oral statement has to be understood as a reference to the prospectus, that something along the lines of the prospectus referring to the contents of the prospectus. All right, so even in a situation where you have a prospectus, my understanding was that a prospectus is part of a registration statement, but I suppose it could also be separate. Am I right about that, like it's a separate document? It's a separate document that is physically part of – so the registration statement contains a prospectus that doesn't have all the final information, the final prospectus is filed separately, but it's incorporated as part of the registration statement. So yes, it's part of the registration statement, but you could hand someone a prospectus that doesn't have the full registration statement. And in that situation where you hand someone a prospectus and the prospectus has misleading or at least arguably misleading information, your view is that unless they did so in connection with a registered share, there's no liability. Yes, because that's what Gustafson holds. Gustafson says by means of means – No, I understand, but what do we do with the language in the statute, Section 12, that suggests that there is liability with respect to at least some exempt shares? I guess I can't – if you were right that registration was sort of the core requirement of liability under 12a, how do we have a 12a that applies on its face to some exemptions? Well, because that's what Congress said. Congress specified the exempt shares to which Section 12 would apply. The reason it did that is because otherwise exempt shares – But if you were right, if you were right about your thesis, if you were right that 12a really is all about registered shares, then we wouldn't see an exemption. I appreciate that Congress put it in here, but I think that undermines your argument about what 12a is actually doing. No, Your Honor, because without that parenthetical that brings Section 3 exemptions back into the scope of liability, all the Section 3 classes of shares would be exempt from Section 12 liability. But Congress wanted Section 3 classes – because you understand, Section 3 exempts an entire class like bank securities or savings and loan securities. They're not subject to the registration requirement, to the Section 11 liability requirements. But Congress, because those are often issued in public offerings, just like non-exempt shares, Congress wanted those public offerings of otherwise exempt shares to be covered by – But is it like – go ahead. I was just going to ask you, I mean, the QP said, whether plaintiffs must plead and prove that they bought registered shares – sorry. We're asking whether 12a2 can only apply when there are registered shares. You're taking a position, yes, but by the same token, as this interchange with Justice Jackson is showing, 12a2 can apply sometimes to shares that are exempt from registration, right? Yes, Section 3 classes. So why is it that if we decided it very narrowly to avoid some of the problems Justice Kavanaugh is flagging, couldn't we just say no? The answer to that is no, because it applies, as Justice Jackson was saying on its face, to some shares that are exempt from registration. So, no, we don't have to decide the limits. This isn't a Section 3 case. This is not a case involving a Section 3 exempt class. So you would just read that exemption very narrowly is kind of your answer to Justice Jackson. I'm sorry, read that language about Section 3 and saying which non-exempt shares are out of 12. You just read it very narrowly. I would read it according to the text. Congress said Section 12 imposes liability, which this court said is, generally speaking, contemporaneous with the prospectus requirement, except there's an exception. Congress made an exception to that limited scope. The exception is, oh, but we're bringing back into this the classes that are exempted by Section 3. So in addition to most securities where the rule is only if there's a prospectus obligation and therefore only if there's a registered share can you have Section 12 liability, in this limited category of cases, namely Section 3 exempt classes, you can also have Section 12 liability even though there's no prospectus obligation. But that has nothing to do with this case because this case is not a Section 3 exempt class. It's a Section 4 exempt transactions case, and Congress did not say, oh, and we also want Section 4 exempt transactions to be covered by Section 12. And that makes perfect sense because Section 4 exempt transactions, by definition, are not public offerings. That's why they're exempt under Section 4. That's what D'Augustine said in court said in explaining why Section 12, putting aside the Section 3 exception, Section 12 is limited to public offerings, that is, offerings that are not exempted by Section 4. Can I ask you a question about Section 11? The former SEC official's amicus brief suggests that they expected that in a direct listing, the registration statement would cover all the securities, all the shares, and they say that your position would essentially transform the 33 Act into an opt-out regime for direct listings and that we shouldn't do that, and that was contrary to the SEC's expectation when they tackled this issue. Do you just want to respond to that? Yes, Your Honor. That's clearly wrong for multiple reasons. In the first place, the SEC approved the registration in this state, in this case, and indeed allowed it to take effect in advance of the normal time frame after reviewing it. The registration makes very clear at page 235 of the Ninth Circuit Exemptive Record that in addition to the 118 million registered shares being made available, there are already 165 million exempt shares free to trade under the SEC's own rule that addresses the Section 4 exemption. So it's perfectly clear the SEC knew there would be additional exempt shares that weren't being registered that would trade and already were free to trade even before the direct listing. Beyond that, the SEC in 2020, in the order that's discussed in the briefs, where it approved the most recent version of the NYSE direct listing rule, a commentator raised concerns about Section 11 liability in the direct listing context. They said, gee, it's really hard to prove Section 11 liability in the direct listing context because it's hard to trace. And the SEC acknowledged that, said, well, yes, that's true, but there are lots of circumstances in which tracing is different in the modern securities market, and that's not a reason not to approve the rule change. Could the SEC fix this, or can only Congress fix this? The word fix is loaded, but you know what I mean, change this. Yes, the SEC could fix this. And if I may, I'd like to finish my answer to the previous question, because this is important. This conclusively demonstrates that the argument on the other side, that direct listings were supposed to require exempt shares to be registered, is just wrong. It would have made no sense for the SEC to be talking about the difficulty of tracing in the direct listing context if the SEC thought that exempt shares had to be registered in a direct listing. There would be no tracing problem if direct shares had to be registered in a direct listing. So obviously the SEC knew and understood and expected that exempt shares would not be registered in a direct listing. The SEC, and let me just speak by Chairman Clayton of the SEC, who was the chairman at the time that that order was issued, and Professor Grunfest identifies a number of things the SEC could do to address this if they thought it was a problem. They have chosen not to do any of those things to date. They have the power to do it. And the law and business professor's brief also suggests that a recent regulatory change after this case, the creation of the consolidated audit trail, may facilitate tracing in the future. That remains to be litigated. But again, the SEC has ample authority to address this if they think it's a problem. Thank you, Mr. Hungar. You indicated that the reason the SEC wasn't here, because they obviously adhered to the prior position that they had expressed. Do you have any evidence for that? No, Your Honor. But we think that's a reasonable inference, since if they had wanted this court to be aware that they had a different position, I would think they would have told the court. Justice Thomas? One small question. How would you go about proving which shares are registered in a trade like this? Well, in a case like this, you would need to be able to trace the shares to the seller, because the identity of the seller and the basis for their sale determines whether they were registered or exempt. That is, if the seller was a controlling shareholder who could only sell registered shares and, therefore, they were selling the shares that were registered under the registration statement, that would satisfy. Now, again, it's very difficult. We don't think that it can be done in this case. There's another pending state case where plaintiffs claim they can prove it, and that's being litigated. But the fact that it's difficult doesn't justify reinterpreting the statute, particularly since the difficulties arose decades after the statute was enacted in the 1960s. Thank you. Justice Alito? Justice Sotomayor? You are asking us on Section 11 to reverse the judgment below. The Respondent is asking us to vacate and remand so that they can have an opportunity to prove tracing. You're basically arguing, I think, that they waived that. Isn't waiver always an issue that we let the court below decide? I don't know that you always let the court decide. I mean, it's a question of forfeiture here, not only in the courts below, but also in this court. They didn't raise in their brief in opposition any claim that, oh, by the way. Well, I think they do when they say vacate and remand and let us do it. But, Your Honor, normally this court doesn't reach issues or take account of issues that were forfeited even in this court. But it wasn't forfeited in this court. They said give us a chance to prove we can. Under Rule 15, Your Honor, they forfeited it by not saying it. I'm not going to fight any longer with you on that. I was intrigued by some amici suggesting that we adopt the burden-shifting framework. As I understand what's happening here is that these direct listing mechanisms are being touted and advanced in order to avoid having any tracing of direct listings of public offerings. And so if we were concerned about that, it did seem to me that the burden-shifting idea made some sense. You are purposely avoiding a public offering to avoid having to sell only registered stock during a locked-up period. And so you're abating all Section 11 liability, even though you are registering as the SEC requires. You're issuing a registration statement before you can issue any stock whatsoever. So I guess my question to you is, shouldn't we be leaving open that question of the burden-shifting, and why shouldn't we? So, several responses. The burden-shifting argument is one of the many issues that wasn't raised in the brief in opposition or below and shouldn't be addressed by the court. I don't accept that, but should we leave it open? Well, I don't think the court should address it at all because it's not presented in the case. But if the court were to say something about it, there's no basis at all for burden-shifting in this statute. Well, there's no basis in the statute for tracing either. Well, again, as I said, Section 12A1 shows that Congress necessarily mandated tracing. But beyond that, the statute in Sections 11 and 12, Congress very carefully addressed the question of burdens. It specifically assigned certain burdens that would normally have been on the plaintiff to the defendant in both of those provisions, such as the burden of proving a lack of negligence or due diligence. And so Congress has spoken very specifically to the question of burden allocations, and this court should not essentially redo Congress's work for it and decide that additional burdens should be placed on the plaintiffs. Justice Kagan? Mr. Hunger, I just wanted to go back to the Section 11, Section 12 distinction and give you a chance again to tell me why I might be wrong about the textual differences between the two sections. And again, I want to just put Gustafson off the stage because I think we might just have a difference as to how far it went and what it said. So I count four key differences between the two sections. First, there's no reference in Section 12 to registration. Second, Section 12 clearly covers some unregistered shares because it ropes in Section 3 securities. Third, Section 12 refers to sales not only by means of a prospectus, but also by means of oral communication, which would suggest that we're outside the world of registration. And fourth, Section 12 creates liabilities for sellers who had absolutely nothing to do with the registration statement. So the class of people who might be liable is very different and is not connected to the registration statement. And what that suggests to me is that the two provisions are targeting two very different things, that one is targeting dishonesty in creating a registration statement, and the other is targeting dishonesty in certain kinds of sales, period, with or without a registration statement. So why am I wrong? So Section 12 does refer to the registration requirement, not in so many words, but by definition when you're talking about a prospectus, a prospectus is directly tied to the registration statement requirement. Section 5, Section 5B2 of the Act specifically says that the obligation to distribute a prospectus arises only with respect to... I think that was my number three. It says prospectus or oral communications, so we're clearly dealing in a world here in which it might be a prospectus or it might be something else. Well, I'm trying to take them one at a time, Your Honor. The argument that Section 12 doesn't refer to the registration requirement is incorrect because liability is predicated, at least with respect to the first part of the liability provision, on the prospectus requirement. And again, the prospectus requirement is limited to and applies only with respect to any security with respect to which a registration statement has been filed. That is the definition. Such security in Section 5B refers back to any security with respect to which a registration statement has been filed, and such security is the only security as to which there's an obligation to distribute a prospectus. And this Court said in Gustafson that's what prospectus means in Section 12. It means the prospectus that's referred to in Section 5B, which is to say the prospectus that has to be distributed for any security with respect to a registration statement has been filed. So there is a clear and unambiguous direct link between prospectus in Section 12 and the registration statement in Section 5, and only registered securities are subject to that requirement. This Court said that in so many words in Gustafson. So with respect to oral communication, again, what this Court said in Gustafson, what the Courts of Appeals have said under NOSA or SOCIUS or whatever that canon of construction is, that oral communication can't mean every oral communication, because given that prospectus is limited to the prospectus referenced in Section 5 and applies only to registered shares, it would dramatically expand the scope of liability in a bizarre way if the only misrepresentations in a writing that were actionable were in the prospectus applicable only to the registered shares, but then like oral communications open the door to all sorts of suits based on oral communication. So this Court in Gustafson indicated in the Courts of Appeals that consistently held oral communication means an oral communication relating to the prospectus, not some unmoored type of oral communication. So again, if it has to relate to the prospectus, that means it's tied to the registration requirement. You asked about, you made the Section 3 point. All I can say is I've said before, when Congress creates a liability provision that on its face would not apply to exemptions because they're exemptions, and then it says, oh, but this particular category of exemptions we want to bring back in to the scope of liability, it is reasonable to infer that they didn't bring in the other category of exemptions, the Section 4 exemptions, that they didn't include in that parenthetical as securities are going to be covered by Section 12 even though they're normally exempt. And so the inclusion of one category of exemptions and the exclusion of another category of exemptions strongly supports the conclusion that the second category of exemptions remains exempt. You had one other point. Justice Gorsuch? Justice Cameron? Justice Jackson? Just to ask you quickly, I've heard you say a couple of times that there's an obligation to distribute a prospectus or register, and I assume you mean a legal obligation. And your brief does focus heavily on that requirement, but I guess I'm wondering about voluntary registration. So can a company voluntarily register exempt shares? I mean, I suppose so. Well, again, the Section 4 exemptions are transactional. So you could have a share that is exempt in the hands of its holder, that is, they would be legally entitled to sell it, but they might choose to have it registered and ask the company to register it along with, say, a registered offering of other shares. And isn't that what's happening in the direct listing context to some degree? No, Your Honor. No. Why? Because they're not registered, and the shareholders aren't asking. Well, sorry, to be clear, some shareholders did register their shares. Those are registered shares. They had to register those shares in order to sell them because they were subject to restrictions. Other shareholders. But they started off being exempt. I thought the direct listing, the whole pool started off being exempt, and then we had registration as part of it, and some of those shares were designated as being registered as part of the direct listing. Not quite, Your Honor. Okay. Again, and it's confusing because the Section 4 exemptions are transactional. So before the direct listing, there were certain large shareholders or affiliates of the corporation who owned shares. They had obtained those shares from the corporation in an exempt transaction for that transfer from the corporation to that initial category of, you know, officers, directors, major shareholders. All right. So those were exempt. Well, but they weren't exempt in the sense that there were restrictions on their ability to sell them because in that category, officers, directors, affiliates of the corporation, they could not sell those shares publicly without registering them. Okay. And therefore, in the direct listing, they registered those shares in order to sell them. But other people who were not affiliates, low-level employees, say, who might have gotten a few shares as part of the employee stock option program or something, they are not subject to the same restrictions because they're not affiliates of the company. And under the SEC's rules determining who is exempt and who isn't exempt, they were entitled to sell their shares publicly even before the direct listing. Without registering them. Correct, without registering. And they remained entitled to do that after the direct listing. So the ones who registered them, do you concede the Section 11 liability attached at that point? All right. Those are registered shares, and therefore, Section 11 applies to those shares, yes. Thank you. Thank you, Counsel. Mr. Russell. Mr. Chief Justice, and may it please the Court, everyone agrees that such security in Section 11 refers in some ways to the registration statement challenges misleading. The question here is the precise nature of that relationship. Petitioners say such security refers exclusively to what they call registered shares. But the statute doesn't use that term or provide a definition for it, and neither do petitioners. That might seem unnecessary because one would think that a registered share is one specified in the registration statement, but registration statements do not specify individual shares as exemplified by the examples of Petitioner Butterfield's shares that we discussed in our brief. Instead, what registration statements do is they do not act at the level of individual shares. Instead, they act at the level of a public offering of securities, not shares. That is the planned introduction of a group of fungible shares to the market at a particular time. The function of the registration statement is to provide the market the information it needs to value all of those fungible shares in that public offering. And the function of Section 11 is to provide investors confidence that they can rely on the integrity of that market price, even though some of those shares could have been sold in some other transaction without a registration statement. Accordingly, the better view is that such security in Section 11 refers to all of the shares in the public offering for which the registration statement was a prerequisite. Section 12 also uses the term such security, but unlike in Section 11, it has a direct grammatical referent, the security sold by means of a misleading prospectus. By its terms, that provision applies to a security, not a registered security. And the prospectus here is exactly the kind of document Gustafson held to be a prospectus within the meaning of Section 12. Congress expressly mentioned shares exempt under Section 3 because it had to, because Section 3 exempt shares are not subject to any of the provisions of the statute, including Section 12. Section 4 does not operate in that way. It exempts only from the specific registration requirement. As a consequence, there is no need for Congress to mention it. I welcome the Court's questions. Would you comment on the tracing requirement? Mr. Hungar, I believe he said it was always there. And I'd like to hear your reaction to that. Sure. What he is referring to is a series of cases, starting with Barnes, in which the Court said not that you have to share, not that you have to show that you purchased a registered share, because all the shares in Barnes and all the cases that followed were registered shares. The question was registered under which registration statement? Were they registered under the, were they part of the offering made possible by the allegedly misleading registration statement, or had they been issued previously, which is what happened in Barnes, under a registration statement that was not misleading? Those courts do not address the question here. They ask which registration, which registration statement, which registered offering, and sometimes they use that term. They say you have to trace your shares to the registered offering. None of them say you have to show that you purchased a registered share, because it didn't matter in any of those cases. And, indeed, the only case that they cite to that even addresses this question of the distinction between exempt and registered shares is the Fifth Circuit's 2005 decision in Crimm. That is not the kind of circuit consensus that Congress could have ratified. And, instead, the proper understanding of those cases is they are addressing a different question. And, if anything, they are consistent with our view that the focus of Section 11 is on the registered offering, because everybody who purchases in that offering is going to have their shares valued based on that registration statement, whether that share could have been sold in another kind of transaction or not without a registration statement. And, finally, should Sections 11 and 12 rise or fall together? No, they definitely do not. They have very different language. The textual ambiguity that arises in Section 11 comes from the fact that such security doesn't have a grammatical reference. It does in Section 12. It unambiguously refers to a security, not a registered security. My friend's reliance on guff system is entirely misplaced. The Court wasn't considering anything like this question there. It was asking the relatively straightforward question of what is a prospectus, and it held that a prospectus is this formal kind of document that gets filed. Not provisions of a contract in a private transaction. Of course, this is not a private transaction. This is SLAC's initial public offering. They issue billions of shares to the public for the first time. They sold billions of dollars' worth of shares to the public for the first time here. It is a core thing that the 33 Act is designed to regulate. But they claim to have found a way to get out of Section 11 liability, not only in this special context about direct listings, but even in the more typical and much more consequential context of regular IPOs, because I don't think this Court can write a decision adopting their interpretation without opening the door to issuers allowing some exceptions to their lockup rules that would result in the immediate introduction of exempt shares at the same time as the IPO shares. What is your understanding, Mr. Russell, of why that hasn't happened before now? Because I would think if this is an unsettled question, somebody would have tested exactly that. Just in a regular IPO, you also include some unregistered shares. But we haven't seen that. We haven't seen that. And the important thing is we haven't seen any case saying you can do that either. Petitioners insist that this has been settled for a long time, that they absolutely have the right to engage in this kind of stratagem. But every time they say that, they don't cite any cases. Do you know of any issuers that have done that? Certainly I'm aware the SEC in that 2020 order notes in a footnote that some lockup periods have exemptions. I'm not aware, to answer your question, of anybody raising this argument in the post-lockup period context. But do you think that there would be no distinction between the two in terms of the law that's being argued about here? I don't see how you could. Their position is that as soon as exempt shares enter the market, you have to trace and show that the shares that you identified are registered shares and not exempt shares. And that there's no difference between the post-IPO lockup period and a direct listing in that respect. And they insist, and the Fifth Circuit and CRIM has held, that that's impossible to do. That as soon as it enters the share, that shares get intermingled, including in the book, the street listings and brokers. And at the very least, even if it's not completely impossible to conduct that kind of tracing, it is surely exceedingly burdensome. And exceedingly burdensome not only for the parties but also for the courts and the juries who are going to have to determine the registration status of perhaps millions of individual shares of stocks and on the third parties who will be subject to discovery, the brokers, the share depositories, in order to engage in this exercise. One of the things that's said on the other side in the amicus briefs, I think, is that you have a problem going the other direction from the status quo, that in a typical IPO, the issuer's liability ends at a lockup period. But your theory, if we were to accept it in Section 11 cases, would allow liability to go on even after the lockup period. So two things about that. I think there are things that they can do to cut the liability off. But they don't cite any cases for the proposition that they get to cut the liability off either. And they certainly don't cite any cases. But that would be just the premise. That would be a big change from the status quo in IPOs. No, they have not established that that is the general rule in IPOs, that they get to cut off that liability in that way. It may be the practice in some lower courts that it's not. There's no circuit consensus about that. And certainly this court hasn't held. But what there's – Do you see a lot of suits that we're not seeing, kind of to Justice Kavanaugh's point? There's cases where people are including the post-lockup IPOs shares in them? Yeah. I don't know. I mean, nobody has cited this court cases one way or the other about that body of cases. I will say what issuers can do. Maybe it's because people think they can't bring them. I mean, it seems kind of, to Justice Kavanaugh's point, the status quo is that after the lockup period ends, these suits don't go forward. Two things about that. One thing I think even on our view of the statute that an issuer can do is withdraw the registration statement at the end of the lockup period. Slack did something similar in this case. After 90 days, they withdrew the registration statement. And so that provides them that kind of protection. The difference between that solution and what they're proposing is that if you adopt their view, they don't only cut off liability after the end of the lockup period. They can, simply by having a limited exception to the lockup period on day one, eliminate all liability altogether, including for all the shares in the IPO, because as soon as they let a single share, an exempt share, onto the market, which they can easily do, it doesn't harm their interest of the underwriters because they don't have to let enough in that's going to affect the share price. As soon as they let in even a small number of shares, we've got this intermingling that they say requires tracing that they say is impossible to do, and the Fifth Circuit has agreed. You know, they've been a little bit careful about how hard they think tracing is in this court, but you can rest assured that if this court issues a decision in their favor, they are going to be arguing to the lower courts that you need to adopt the position in CRIM, and then we'll be at the end of it. So let me ask you, if we find tracing is required, then we should do what they want, reverse, because you can't prove tracing? No. I think you should leave it to the lower court. It is true we pled in our complaint that the shares were traceable, but we did say during the briefing that if what that means is we have to show the exemption status of every share that my client purchased, we couldn't do that, and I think you can just leave it up to the lower courts to say whether that precludes us from being able to take advantage of the additional cases. So if I was seeing the numbers, you could prove that a certain percentage of your stock had to be registered, correct? I certainly think we can meet the Iqbal and Twombly standard by showing that it is not only plausible but virtually certain that my client purchased some registered shares, and I think that's all you have to do to establish that and everything else is a damages question. Can I ask about your Section 11 argument, because I thought I understood you to say in your brief that such securities include shares that the registration statement allows to be sold, but not if the registration statement merely informs the share's valuation. Is that your position, and how do you draw that line, or where does it come from? No, I apologize if we gave that impression. Our position is that Section 11 is agnostic to why you have a registration statement. The point of Section 11 is once there's a registration statement, all the shares in the public offering that required that registration statement in order to go forward are going to be valued on the basis of that registration statement, and it is completely understandable that Congress would have then said that everybody who buys shares that are based on a price that is inflated or deflated because of a misstatement should have a remedy. So does it matter? My understanding in this particular case is that the direct listing itself registered certain shares or said that some subset of all the shares that were going on in the market would be registered and others weren't. So what do we do with that fact in light of your argument? I think one of the benefits of our argument is it gets away from this question of having to look at a registration statement and say which shares are registered and which aren't. In our view, so long as the shares were part of a public offering for which a registration statement was required. No, I understand that, but don't you have to persuade us that that's what Congress intended with respect to Section 11? And so why is it that you can have a world in which the registration statement speaks to certain shares as registered and certain as not, and under your view still implicate all of them, implicate Section 11? So two responses to that. One is I think the premise of your question is that registration statements identify specifically identifiable shares, and that's not the case. So if you look at the Slack registration statement here and look at the shares of CEO Butterfield, they say he has 41 million shares and he's registering 11 million of them. There's no way you can tell from that registration statement which are the 11 million and which are the 30 million that aren't registered. Yet they would have my client have to prove, even though we know for sure, even if he paid $40 directly to Mr. Butterfield and got a share, he could not tell whether that share was registered under this registration statement or not, and that's because registration statements pave the way for public offerings. They do not register individual shares. Oh, he can't? The reason he can't is because the statute says such security. I mean, that's the big hurdle for you to get over. I don't think unless your argument is, and I'm not dismissing it in any sense, but it's simply a practicality argument. You say that Congress must have intended everybody to be able to sue and that we should not be too punctilious about looking at such and such security. No, we acknowledge such security requires a relationship with the registration statement. My point I was just making is that they have this idea of what a registered share is, which in order to work requires registration statements to identify specific individual shares, and they don't. If my client knew that he had a particular share, if he got a paper certificate, he could not look at the registration statement and tell whether that's a registered share or not because the registration statement does not say which of Mr. Butterfield's 40 million shares are registered and which aren't, and that's a problem. The broader point about such security, though, is that their premise is that Section 11 is enforcing the obligations of Section 5 and 4, and that's simply incorrect. Section 4 and 5 describe the obligations of share owners and describe the conditions under which they can sell their shares lawfully. Section 11 doesn't say anything about lawful sales, and it doesn't say anything about the duties of sellers. It instead addresses the obligations of people who write registration statements and says to them that you've got to be accurate, and then the question simply becomes is what is the scope of the remedy provided when that doesn't happen, and we don't think that you can just transport a set of distinctions that were put into the statute to govern the obligations of sellers and when they can sell to that context. It makes perfect sense that Congress would have understood that a registration statement speaks to the valuation of all of the shares in the registered offering for which it would file, and it's going to injure everybody who purchases in that public offering. You spoke a few moments ago in the briefs, too, a bit about this traceability requirement under Section 11 as a standing question, and I just want to clear that up because I, for one, don't quite see it that way. It seems to me like it's part of the cause of action under Section 11. It doesn't go to the question of constitutional injury in fact, and so, yes, all you'd need to do is plead facts suggesting that you can trace consistent with the twig ball standard, as my friends like to call it, and then you're off to the races, and it really just becomes a matter of damages, as I think you also alluded to. That's right. I don't think anybody is saying that it's a matter of Article 3 standing. They use the phrase statutory standing, but I don't know if that's any different than part of the cause of action. The critical thing, though, is that it is not part of the cause of action that in order to get into the door and to proceed with the case, you've got to be able to show the registration status of every share. I understand your position on that, but if we were to rule against you on what Section 11 means, it still would enable you to plead, and we're only at the 12B6 stage here, that there are traceable shares and plausible facts suggesting some traceable shares. That's all that would be required. That is correct, and that's why we think if you adopt that interpretation of Section 11, you should disavow any suggestion that they are entitled to affirmance of their motion to dismiss at this stage, because we surely satisfied twig baller. Can we leave that to the Court of Appeals to decide whether it was forfeited or not? Certainly. So I'm addressing, I think, two different questions. There is a forfeiture argument, and I think you leave that to the Court of Appeals. There is a separate argument about why maybe you would affirm because we can't, because under your interpretation that requires registration, we don't meet Iqbal and Twombly, and I think you should reject that. More broadly, I think the suggestion on the other side, and certainly the amicus briefs, is that this is a new thing, direct listings, and to take your position here, we would have to depart on Section 11 from a lot of laws, starting with Judge Friendly, that's been around for a long time, and rather than doing that, this is their suggestion, we should leave it to the SEC and or Congress rather than ourselves departing from that longstanding body of law. So that's the institutional argument of sorts that they're suggesting, leave it to the SEC, and I just want to make sure you can respond to that. Thank you. I appreciate that. We strongly dispute the premise. The body of law that they are describing does not hold that plaintiffs have to show that every share they purchase was registered or not. The body of law that they are pointing to simply says you have to show that you purchased under the registered offering that was governed by the registration statement that you said was misleading, as opposed to issued under some registration statement a few years earlier that could have been entirely accurate. None of those cases decide the question presented here. Sometimes they use language about registered shares, but it doesn't matter. It didn't matter in that case because they weren't drawing a distinction between registered shares and exempt shares that were issued as part of a registered offering because this simply didn't matter in that case. If I could turn again to Section 12 for a moment, you know, I do think that the plain language of this statute just directly answers the questions here. This is not at all surprising that Congress would say that if you use a misleading prospectus to sell a security, it doesn't matter whether you're using it to sell a registered security or an exempt security, it causes the same harm. And, of course, in a case where you have an intermingling of exempt and what they call registered securities, anybody who is offering those securities for sale is going to make use of that prospectus because they have no way of knowing if they are offering and advertising and marketing registered shares or not, and in all likelihood the people are going to buy some of both. But the harm that Section 12 is directed against surely arises whenever that prospectus is used to market securities in that way. And I don't understand any reason why my friends think that the parenthetical that references Section 3 was necessary in order to make clear that exempt shares are a security. Clearly, an exempt security is a security. If you were to lose on Section 11, and I'm not saying you're going to, but if you did the discussion we had earlier about leaving then Section 12 to the Court of Appeals, because I think you raised good arguments on Section 12, the other side raised good arguments about Gustafson, we don't have the SEC, we don't have a lot of case law, I'm speaking only for myself, a bit concerned about saying too much on Section 12 without more confidence about what we're doing. We are the respondents. We didn't want you to take either question. And we're happy for you to leave this out of the way it is. I do think it is an entirely straightforward textual question. I do think if you're concerned about – I apologize. It's not. But anyway, keep going. But I would say that if you're concerned about getting this right without the benefit of the views of the SEC, you should consider digging the entire case, because I don't think that the concerns that you have about the correctness of the parties' interpretations of Section 12, I think, arise with respect to Section 11 as well, because they are, again, the entire premise of their argument is that the world is divided into exempt shares and registered shares, and Section 11 applies. And exempt shares are exempt from essentially everything in the statute. Section 3 does do that. Section 3 identifies a body of shares that are exempt from nearly everything except Section 12 in the statute. Congress didn't do that for Section 4. Section 4 simply, as I said before, addresses when certain shares can be sold and in certain kinds of transactions. It is not an overall status that it bestows on individual shares and exempts them from everything in the statute. It's odd that the SEC is not here. Mr. Hungar, given how they come in in our other cases, Mr. Hungar suggests the reasonable inference of Section 11 is that they've stated their position before, but I just want you to give us your response to that. I have no idea why they're not here. But I can say with great confidence that the position they expressed before is not a position that directly translates to this case. They express the position that Barnes adopted, which is that you have to trace your shares that you purchased to the registered offering that was governed by the misleading registration statement, not to some other offering that may have had a perfectly fine registration statement. I have read some commentators suggesting that the SG is having trouble with this case and doesn't know what to do. Do you have any indication of that? I'm sorry. I just don't know. It may not be the only one. I will say, you know, there's this question of, you know, can Congress or the SEC fix this? Certainly I think there would be something to fix, because, again, the practical consequence of adopting Petitioner's position, I think, is inevitably going to open the door to this stratagem of letting in a few exempt shares, even in traditional IPOs, and arguing that, therefore, you have to trace, and that's generally going to be impossible. In Clip Note 7 of your brief, you acknowledge that there is an argument that the SYSE rule requires that all securities sold in a direct listing be covered by the registration statement, and presumably by the prospectus as well. But you acknowledge you waive that argument. That's right. Why isn't that a foundational question, or a critical question, with respect to whether we impose a tracing requirement on you in this direct listing context? I do think it is a critical question, because it will mean that if you were to issue a decision in the respondent's favor in this case, it may not matter in the direct listing context. And the only effect of the decision then would be, with respect to this much more common, much more consequential, an under-briefed issue about what happens after the expiration of a lockup period in a traditional IPO. You know, it is unfortunate that we did not raise this below or before, and we're not asking the Court to rule on it now. We recognize that that would be unfair. But we do want the Court to be aware of this question and not to say anything in its opinion. It might be a ground to dig. It might be another ground to dig. It might be. I can certainly understand why the Court would do that. You know, we're in a poor position to suggest that you do that, because we didn't raise this in the briefing opposition. So we do think at the very least, though, that the Court should leave that open, and that should be something that can get percolated. And that may end up resolving the actual question in the context of direct listings. And, again, I do think it is a very serious consequence of their position that you're going to create a pathway for evasion of Section 11 in the context of traditional IPOs. Their response isn't that that's wrong. It's that that's right, and we've always had that right. That is wrong. Their other response is don't worry about it, because there's always Section 10b. You know, that, I think, is an inadequate response, including because the whole reason Congress enacted Section 11 was because it thought the common law cause of action for fraud that existed before the Great Depression was inadequate. It's not something that Section 10 provides. Counsel, I think you've answered my question. I want to do it. I'm sorry. Anything further? Justice Thomas? Justice Alito? I wanted to make sure, Mr. Russell, I understood your textual argument, because it does seem to me like you have a hard road to hoe here. Granted, such security doesn't have an antecedent, but why shouldn't we read it Mr. Hunger's way? Two reasons. One, Mr. Hunger's way requires you to be able to identify specific shares as registered by the registration statement. As the Butterfield example shows, you cannot do that. How about when it talks about the registration statement becoming effective, and then it switches over to Section 6, and it says a registration statement shall be deemed effective only as to the security specified therein. Why aren't we talking about those securities? Because the word security there is not share, and it is not referring to individual shares, including because registration statements don't specify individual shares. If you look at Section 7, which then lists what goes into the registration statement, it refers to Schedule A. Schedule A doesn't say that you have to identify specific shares. The closest it comes is in subparagraph 11, which says you have to identify the amount of capital stock, an aggregate question, not individual shares. If you look at the extensive SEC regulations about what goes into the registration statement, it also doesn't require you to identify individual shares. And as I said before, and as the Butterfield example shows, this registration statement doesn't identify individual shares. But I will say, even if you thought that it made sense to talk about registered shares and you could identify them and you knew what they were, it is nonetheless the case that Section 11, I think, simply doesn't follow that line of distinction. That's the line of distinction about the lawfulness of sales. It is about the obligations of sellers. Section 11 is about the obligations of people who write registration statements, and it is not at all strange. When we know that every share in a register offering is going to be valued or misvalued based on what's said in that registration statement, it's not at all unusual to think that Congress would provide a remedy to everyone who is foreseeably injured. Thank you. Justice Gorsuch? Justice Kavanaugh? Justice Jackson? Thank you, Counsel. Thank you. Rebuttal, Mr. Hungar? Thank you, Your Honor. Just a few brief points. First, some factual corrections. SLEC did not withdraw its registration statement. It merely withdrew it with respect to unsold shares. So the registration statement remained in effect, and under response to interpretation, there would be no end to the liability potential for companies that issue registration statements for the full three-year period of the statute of propose, which would dramatically change the consensus. Mr. Butterfield and other affiliates of the company could not sell unregistered shares, so if they registered only some of their shares, only those could be sold. That's because it would be illegal to sell unregistered shares because of the exemption that only applies for affiliates. It only applies to the shares that are, or rather, if there is no exemption for them to sell, they'd have to be registered in order to sell, so only the registered shares, so there's no difficulty determining whether he sold registered shares. Barnes did involve exempt shares as well as registered shares that were already in the market. The case makes that clear. Counsel says that there's no consensus on Section 11. That's simply incorrect. Every court of appeals that addressed the question, eight courts of appeals, said that what such security means in Section 11 is shares registered under the registration statement that's being challenged, and that means, as everyone has understood for the past many decades, that in the case of an IPO, once there are exempt shares on the market, the plaintiff must trace in order to bring a Section 11 claim, and as I said at the beginning, Respondent does not cite a single case to the contrary in the 90-year history of the Act, so the idea that somehow the norm is that people can bring suits in those circumstances is patently incorrect. The SEC has ‑‑ Counsel suggests that the SEC's position is not clear and does not address the question at issue here. That's simply incorrect. Here's what the SEC told this court in the Herman and McClain case. It says, a plaintiff may seek relief under Section 11 only with respect to securities covered by the registration statement. There's no doubt, and in fact, the SEC actually went on to say, even though there could be outstanding securities of the same class, that there would still not be liability, even if people had relied on the registration statement with respect to those other shares. So the SEC's position is perfectly clear. Respondent says that this is a public offering of the exempt shares. That's simply not true. If you look at Gustafson, Gustafson defines what a public offering is. A public offering is an offering by an issuer or a controlling shareholder. That's what Gustafson says, and that's exactly the point that Gustafson is making, distinguishing between the public offerings that are covered by Section 12, public sales, public offerings that require a registration statement and that are by issuers, controlling shareholders, underwriters, and the like, as distinct from the exempt shares that are not public offerings because they're exempt under Section 4, which carves out that different class of offerings for different treatment, including under Section 12. If the Court has no further questions, I thank the Court, and we ask that the judgment be reversed. Thank you, counsel. Counsel, the case is submitted.